UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
AARON ROBLES, individually and on behalf of :
others similarly situated, :
:
Plaintiff, :
:
-against- :
:
LIBERTY RESTAURANT SUPPLY, CORP., :
EBTIHAL ISLEEM AND MOHAMAD :
HAIMOUR, :
:
Defendants. :
------------------------------------------------------------ x

**MEMORANDUM & ORDER**

12-CV-5021 (FB) (VMS)

**Scanlon, Vera M., United States Magistrate Judge:**

Before this Court on consent of the Parties[1] is the motion of Plaintiff Aaron Robles ("Mr.

Robles") for conditional certification of a collective action against Defendants Liberty

Restaurant Supply, Corp. ("Liberty"), Ebtihal Isleem ("Ms. Isleem") and Mohamad Haimour

("Mr. Haimour") (collectively, "Defendants") and for permission to circulate a proposed Notice

of Lawsuit to potential opt-in plaintiffs, pursuant to the Fair Labor Standards Act of 1938, as

amended, 29 U.S.C. § 201 et seq. (the "FLSA"). For the reasons stated below, Plaintiff's motion

is granted in part and denied in part, in that the action is conditionally certified as a collective

action and Plaintiff may circulate the revised Notice of Lawsuit and Consent to Join form

attached to this Memorandum and Order as Appendices A and B.

### I. BACKGROUND

Unless otherwise noted, the following facts are drawn from Plaintiff's Complaint.

Compl., Oct. 5, 2012, ECF No. 1. Liberty is a New York corporation that sells supplies to

restaurants in and around New York City. Id. ¶¶ 3-4. Ms. Isleem and Mr. Haimour are owners,

---

[1] See Notice, Consent & Reference of a Dispositive Mot. to a Magistrate Judge, ECF No. 35.

managers and employees of Liberty.  Id. ¶¶ 6-7.  In June 2011, Mr. Haimour hired Mr. Robles to

work as a driver for Liberty.  Id. ¶¶ 12, 22.  Mr. Haimour set Mr. Robles's daily and weekly

schedules, and rate of pay.  Id. ¶ 12.  Ms. Isleem prepared payroll records, provided Mr. Robles

with his weekly pay, supervised his attendance, calculated deductions from his pay and gave him

work-related instructions.  Id. ¶ 13.

As a driver, Mr. Robles worked with a helper to deliver supplies from one of Liberty's

warehouses in Brooklyn to restaurants in and around New York City.  Id. ¶ 23; Decl. of Aaron

Robles ("Robles Decl.") ¶¶ 3-4, July 12, 2013, ECF No. 33.  Mr. Robles's job duties included

loading and unloading trucks, driving trucks, making deliveries and collecting payments from

customers.  Compl. ¶ 23; Robles Decl. ¶¶ 3-4.[2]  The employee working as his helper had the

same job duties, except the helper did not drive the truck.  See Golden Decl. ¶ 5.

According to Plaintiff, he frequently complained to Mr. Haimour and Ms. Isleem about

Defendants failure to pay him his proper wages.  Compl. ¶ 36; Robles Decl. ¶ 15.  On July 9,

2012, Defendants purportedly fired Mr. Robles "for allegedly refusing to drive a truck that had

not passed a legal inspection."  Compl. ¶ 37.  Plaintiff contends Defendants fired him in

retaliation for his complaints concerning his wages.  Id. ¶ 38.

### A.  Plaintiff's Minimum Wage and Overtime Claims under the FLSA

Mr. Robles alleges two claims pursuant to the FLSA that are relevant to the present

motion: that Defendants failed to pay him the federal minimum wage for each hour worked and,

for all hours worked in excess of forty hours per week, to pay him at one-and-a-half times his

regular hourly rate.  Compl. ¶¶ 55-70; see 29 U.S.C. §§ 206-207.[3]  Concerning those claims, Mr.

---

[2] When assisting drivers, helpers perform the same duties as the drivers, except that they do not
drive the truck.  Decl. of Wade Golden ("Golden Decl.") ¶ 5, July 12, 2013, ECF No. 33.

[3] Plaintiff also alleges several claims for violation of the minimum wage, overtime pay, wage

Robles alleges that he was originally paid $400.00 per week in cash and was later paid no more than $500.00 per week in cash; in addition, he was never paid overtime rates for his hours worked over forty hours per week. Compl. ¶ 30; Robles Decl. ¶¶ 11-12. Defendants also purportedly made unlawful deductions from his wages, including for parking tickets incurred while performing his job duties. Compl. ¶ 31.

Specifically, Mr. Robles alleges that, from approximately June to August 2011, he worked ten hours per day, five days per week; this amounts to fifty hours per week. Id. ¶ 25; Robles Decl. ¶ 5. Between September and October 2011, Mr. Robles worked twelve hours per day, five days per week, or sixty hours per week. Compl. ¶ 26. From November to December 2011, Mr. Robles worked fourteen- or fifteen-hour days, five days per week, or seventy to seventy-five hours per week. Id. ¶ 27. Between January 2012 and July 9, 2012, Mr. Robles worked twelve-hour days, five days per week, or sixty hours per week. Id. ¶¶ 22, 28.

Defendants generally deny the allegations in Plaintiff's Complaint. Answer, Dec. 28, 2012, ECF No. 14. Defendants produced wage records for Mr. Robles which purportedly record his "Hours Worked," "Rate\Hour," "Overtime," "Salary Earned," "Cash Advance," "Total Paid," "Signature" and "Date," for each week between November 4, 2011 and June 29, 2012. Decl. of Michael Taubenfeld, Esq. ("Taubenfeld Decl.") Ex. 2, July 12, 2013, ECF No. 32; see Tel. Conf. Tr. ("Tr.") 5:8-23, Aug. 7, 2013, ECF No. 41; Defs.' Letter in Opp. to Pl.'s Pre-motion Letter Application ("Defs.' Letter") 1, June 12, 2013, ECF No. 25. According to Defendants, these

---

notice, unlawful deduction, spread-of-hours pay and anti-retaliation provisions of the New York Labor Law (the "Labor Law") § 650 et seq. and the regulations pursuant thereto, 12 N.Y.C.R.R. 137 et seq., as well as a violation of the anti-retaliation provision of the FLSA. See Compl. ¶¶ 71-105. Plaintiff pleaded several of his Labor Law claims as a putative class action, pursuant to Federal Rule of Civil Procedure ("FRCP") 23. Id. ¶ 54. The Labor Law, FLSA retaliation and class action claims are not at issue in the present motion for conditional collective action certification, and these claims will not be described in detail.

records show that Mr. Robles was paid his full and proper wages.  Tr. 5:8-23.[4]  Plaintiff contends

that when he signed these documents, only the "Total Paid" and "Date" columns were filled out;

he believes Defendants "filled in the rest of the columns after [he] started this lawsuit."  Robles

Decl. ¶ 14.

### B.  Plaintiff's Motion for Conditional Certification

Mr. Robles asserts that he was not the only employee of Defendants to be improperly

paid, and that Defendants had a common policy or practice of, <u>inter alia</u>, willfully failing to pay

their employees the minimum wage and required overtime pay.  Compl. ¶ 43.  Plaintiff therefore

seeks certification of a collective action, pursuant to 29 U.S.C. § 216(b), on behalf of himself and

at least forty[5] current and former drivers, helpers, warehouse workers and other employees

performing similar duties whom Defendants purportedly denied minimum wage and overtime

compensation, in violation of the FLSA.  Compl. ¶¶ 40, 42; Notice of Mot., Aug. 9, 2013, ECF

No. 31.

Plaintiff moves this Court for an order 1) approving the text of Plaintiff's Notice of

Lawsuit and Consent to Join form, <u>see</u> Taubenfeld Decl. Exs. 3 & 4; 2) permitting Plaintiff to

circulate the Notice of Lawsuit and Consent to Join form to similarly situated employees; 3)

requiring Defendants to provide Plaintiff with a complete list, in paper and electronic formats, of

the names, mailing addresses, email addresses, telephone numbers and Social Security numbers

---

[4] Defendants contend that all other payroll records, except for this document concerning Mr. Robles, were destroyed during Superstorm Sandy.  Defs.' Letter 1.

[5] Mr. Robles recalled working with twenty-five or more drivers and helpers.  He alleged that, with a high turnover of employees and two work locations, the proposed collective action concerns more than forty current and former employees.  Robles Decl. ¶ 17; Compl. ¶ 42; <u>see</u> Pl.'s Mem. of Law in Supp. of His Mot. for Certification of a Collective Action ("Pl. Mem.") 2, Aug. 9, 2013, ECF No. 34 ("Defendants own two warehouses in the Red Hook section of Brooklyn, one located at 663 Court Street.").  In contrast, Defendants contend that, as of August 2013, they employed only thirteen employees.  Defs.' Letter 1; Tr. 5:24-6:11 ("Mr. Mohamad Haimour was in the court last time and he said there's thirteen [employees] now.").

of current and former drivers, helpers, warehouse workers and other employees performing similar duties from October 5, 2009 (three years before the filing of the complaint) to the present; 4) permitting all similarly situated individuals sixty days to opt into the collective action; 5) tolling the statute of limitations for all similarly situated individuals from the date of Plaintiff's motion to the date of the Court's order on Plaintiff's motion; 6) requiring Defendants to post a copy of the notice of lawsuit at their warehouses; 7) permitting Plaintiff to translate the Notice of Lawsuit and Consent to Join form into Arabic and Spanish; and 8) granting any other relief that the Court finds just. See Notice of Mot.; Pl. Mem.

Plaintiff filed a brief in support of his motion. See Pl. Mem. Defendants submitted no brief or other documents in opposition, instead resting on their pre-motion letter. Letter from Robert J. Fileccia to the Hon. Vera M. Scanlon, Aug. 9, 2013, ECF No. 36; see Defs.' Letter.

In further support of his motion, Mr. Robles submitted a declaration, signed under penalty of perjury, in which he described his observations of and discussions with Defendants' drivers and helpers concerning their working ten-to-twelve hour work days, Defendants' policy of paying workers in cash and Defendants' failure to pay overtime. Robles Decl. ¶¶ 9, 16. According to Mr. Robles, employees Wade Golden ("Mr. Golden"), Cazzie McCoy, Joel, Ronnie, Roger, Ahmed, Steven and Lati[6] confirmed that Defendants paid them in cash, did not pay them premium overtime rates and took deductions from their pay. Id. ¶ 16.

Plaintiff also submitted the declaration of Mr. Golden who stated, under penalty of perjury, that he began working for Defendants as a helper in April 2011. Golden Decl. ¶ 3. His duties included loading vehicles, cleaning up the warehouse, locating products in the warehouse and preparing products for loading. Id. ¶ 3. In April 2011, Mr. Golden worked ten hours per

---

[6] Mr. Robles does not recall these latter employees' last names. Robles Decl. ¶ 16.

day, five days per week; this amounted to fifty hours per week.  <u>Id.</u> ¶ 3.  He earned $300.00 per week.  <u>Id.</u> ¶ 3.  From May to June 2011, Mr. Golden's duties as a helper changed to travelling with a driver to assist with making deliveries.  <u>Id.</u> ¶ 5.  He typically worked ten hours per day, five days per week, or fifty hours per week.  <u>Id.</u> ¶ 6.  He earned $325.00 per week during this time.  <u>Id.</u> ¶ 6.  Between July 2011 and April 2012, Mr. Golden worked eleven to twelve hours per day, five days per week., or fifty-five to sixty hours per week.  <u>Id.</u> ¶ 8.  Defendants continued to pay him $325.00 per week.  <u>Id.</u> ¶ 8.  Like Mr. Robles, Mr. Golden alleges that Defendants never paid him premium overtime pay for hours worked over forty hours per week, took "random and unexplained" deductions from his pay and paid him less than the minimum wage.  <u>Id.</u> ¶ 10.  Mr. Golden complained to Mr. Haimour and Ms. Isleem about Defendants' failure to pay him for all of the hours he worked, but Defendants did not change their pay practices.  <u>Id.</u> ¶ 11.

Mr. Golden similarly observed that most of Defendants' helpers and drivers worked longer than ten hours per day.  <u>Id.</u> ¶ 4.  Mr. Golden spoke to other drivers and helpers, including Mr. Robles, Cazzie McCoy, Joel, Ronnie and Roger,[7] who told him that Defendants did not pay them for all of the hours they had worked and did not pay them premium overtime rates.  <u>Id.</u> ¶ 12.

Finally, Mr. Robles stated that the majority of Defendants' employees are immigrants, that more than half originate from Arabic-speaking countries and that these employees likely do not read English.  Robles Decl. ¶ 18; <u>see</u> Golden Decl. ¶ 13.  A number of Defendants' employees are from Spanish-speaking countries, and Mr. Robles believes that these employees also do not read English.  Robles Decl. ¶ 18; <u>see</u> Golden Decl. ¶ 13.

---

[7] Mr. Golden does not recall these latter employees' last names.  Golden Decl. ¶ 12.

## II.    DISCUSSION

For the reasons discussed below, Plaintiff's motion for conditional certification is granted, and Plaintiff's Notice of Lawsuit and Consent to Join form, with the modifications reflected in Appendices A and B, may be circulated to potential members of the collective action. Plaintiff's request for a sixty-day deadline for filing the Consent to Join form is granted. Plaintiff is permitted to translate the revised Notice of Lawsuit and Consent to Join form into Arabic and Spanish. Defendants is required to post these documents, in English, Arabic and Spanish, at their warehouses. In addition, Plaintiff's request for discovery is granted to the extent Plaintiff seeks names, mailing addresses, email addresses and telephone numbers, and denied to the extent Plaintiff seeks social security numbers. Finally, the Court grants Plaintiff's request for equitable tolling of the statute of limitations for the potential opt-in plaintiffs during the pendency of this motion.

### A.  The Legal Standard

The FLSA allows for collective litigation akin to a FRCP 23 class action insofar as it permits "[a]n action . . . against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). However, "the prevailing view in the Second Circuit, and other Circuits, is that actions such as those pursuant to section 216(b) of the FLSA are not subject to Rule 23 requirements and principles." Vogel v. Am. Kiosk Mgmt., 371 F. Supp. 2d 122, 127 (D. Conn. 2005). In contrast to FRCP 23, certification of a collective action "requires no showing of numerosity, typicality, commonality, or representativeness." Enriquez v. Cherry Hill Mkt. Corp., No. 10 Civ. 5616 (FB) (ALC), 2012 WL 440691, at *1 (E.D.N.Y. Feb. 10, 2012) (quoting Lynch v. United Servs. Auto. Ass'n, 491 F. Supp. 2d 357, 369 (S.D.N.Y. 2007)). Furthermore, potential plaintiffs in a

collective action must affirmatively "opt-in" to the collective action.  See Cohen v. Gerson Lehrman Grp., Inc., 686 F. Supp. 2d 317, 326 (S.D.N.Y. 2010); Vogel, 371 F. Supp. 2d at 127.

Certification of a collective action follows a two-step process.  In the first phase, called the notice stage, the court makes a preliminary determination based on the plaintiff's pleadings and affidavits as to whether the named plaintiff has met a minimal burden of establishing that he and the potential collective action members are similarly situated, in terms of their claims against Defendants.  See Kalloo v. Unlimited Mech. Co. of N.Y., Inc., 908 F. Supp. 2d 344, 346 (E.D.N.Y. 2012); Brabham v. Mega Tempering & Glass Corp., No. 13 Civ. 54 (JG) (VMS), 2013 WL 3357722, at *3 (E.D.N.Y. July 3, 2013).  If the court determines that the named plaintiffs and potential opt-in plaintiffs are similarly situated, then the court may order that notice be sent to the potential opt-in plaintiffs; the court may also require production of their contact information, so that the notices can be properly addressed.  See Kalloo, 908 F. Supp. 2d at 346; Calderon v. King Umberto, Inc., 892 F. Supp. 2d 456, 464-65 (E.D.N.Y. 2012).

"Although the term 'similarly situated' is not defined in the FLSA or its implementing regulations, courts have interpreted it to require plaintiffs to make 'a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law.'"  Calderon, 892 F. Supp. 2d at 459 (quoting Sobczak v. AWL Indus., Inc., 540 F. Supp. 2d 354, 362 (E.D.N.Y. 2007)); see Cohen, 686 F. Supp. 2d at 326 (requiring "a factual nexus between named plaintiffs and potential opt-in plaintiffs with regard to their employer's alleged FLSA violation").  The named plaintiff's assertions alone may be sufficient to meet this minimal burden.  See Calderon, 892 F. Supp. 2d at 460 ("'[C]ourts regularly grant motions for approval of a collective action notice based upon employee affidavits setting forth a defendant's plan or scheme to not pay overtime compensation and identifying by

name similarly situated employees.'" (quoting Sobczak, 540 F. Supp. 2d at 362)); Siewmungal v. Nelson Mgmt. Grp. Ltd., No. 11 Civ. 5018 (BMC), 2012 WL 715973, at *3 (E.D.N.Y. Mar. 3, 2012) (granting preliminary certification based on the plaintiff's declaration concerning communications with his co-workers about the defendants' failure to pay them premium overtime pay); Gani v. Guardian Serv. Indus. Inc., No. 10 Civ. 4433 (CM) (JCF), 2011 WL 167844, at *1 (S.D.N.Y. Jan. 13, 2011) (granting preliminary certification based on the plaintiff's affidavit concerning the hours he and his colleagues worked); Khalil v. Original Homestead Rest., Inc., No. 07 Civ. 695 (RJH), 2007 WL 7142139, at *1 (S.D.N.Y. Aug. 9, 2007) (granting preliminary certification based on the pleadings and the plaintiffs' affidavits concerning the defendants' tip policies and payroll practices); see also Colon v. Major Perry St. Corp., No. 12 Civ. 3788 (JPO), 2013 WL 3328223, at *6 (S.D.N.Y. July 2, 2013) (granting, in part, preliminary certification based on the pleadings and declarations of two co-workers concerning their flat-rate salary and defendants' failure to pay overtime).

At the notice stage, the court does not assess the merits of the plaintiff's claims, nor does the court make factual findings or credibility determinations. See Hamadou v. Hess Corp., 915 F. Supp. 2d 651, 662 (S.D.N.Y. 2013). There is "a low standard of proof because the purpose of this first stage is merely to determine whether 'similarly situated' plaintiffs do in fact exist." Myers v. Hertz Corp., 624 F.3d 537, 555 (2d Cir. 2010) (in appeal concerning class certification, declining to exercise pendent appellate jurisdiction to review order concerning a collective action). During the second stage, after discovery, the court will determine whether the plaintiffs who opted-in are indeed similarly situated to the named plaintiff; if they are not, the collective action may be decertified. Id. at 555; Kalloo, 908 F. Supp. 2d at 346.

### B. The Parties' Contentions

Plaintiff contends he has met his minimal burden to prove he is similarly situated to potential opt-in plaintiffs, based on the pleadings and the declarations of Mr. Robles and Mr. Golden. See Pl. Mem. 9. According to Plaintiff, this Court should approve his proposed Notice of Lawsuit and Consent to Join because it is similar to notices approved by other courts in this Circuit. Pl. Mem. 11 (citing Lynch, 491 F. Supp. 2d at 372).

As discussed above, Defendants did not submit a brief in opposition to Plaintiff's motion. In the pre-motion letter on which they rest, Defendants assert that conditional certification would amount to a "fishing expedition" and would unduly burden a business already "seriously crippled" by Superstorm Sandy. Defs.' Letter 2. Defendants contend that Mr. Robles cannot establish a factual nexus between his situation and that of other employees because there is insufficient evidence that other employees have similar claims. Id. [8] In addition, Defendants rely on pay records which, they allege, refute Mr. Robles's allegations of unpaid minimum and overtime wages. Id.; see Taubenfeld Decl. Ex. 2.

### C. Conditional Certification

The factual allegations in Plaintiff's complaint and in Mr. Robles's and Mr. Golden's declarations are sufficient to meet "the low standard of proof" for finding a common policy violating the FLSA, as required for conditional certification of a collective action. See Myers, 624 F.3d at 555. In his complaint, Mr. Robles alleges that Defendants failed to pay him for every hour he worked, the minimum wage and premium overtime rates. Compl. ¶¶ 19-20, 43, 55-70. Although Defendants contest the truthfulness of Mr. Robles's allegations, including their alleged failure to pay him the proper wages and the number of persons they employ, see Defs.'

---

[8] Defendants' letter pre-dates the submission of Mr. Robles's and Mr. Golden's declarations. Defendants did not submit any response to these submissions.

Letter, Taubenfeld Decl. Ex. 2, this is not relevant now as the court does not make factual or credibility determinations at this stage of the action.  See Hamadou, 915 F. Supp. 2d at 662.

In addition, Mr. Robles's declaration corroborates the allegations in his complaint, see Robles Decl. ¶¶ 7, 11-12, and recounts discussions with eight named drivers and helpers concerning Defendants' practice of paying these employees in cash, refusing to pay them overtime pay and taking deductions from their pay.  Id. ¶ 16.  Plaintiff has also provided the declaration of one of these eight employees, Mr. Golden, who describes his similar experiences as a helper for Defendants.  According to Mr. Golden, Defendants failed to pay him the minimum wage for every hour that he worked and, for hours over forty hours per week, Defendants failed to pay him premium overtime rates.   Golden Decl. ¶¶ 6, 8, 10-11.  Mr. Golden likewise recalled conversations with five drivers and helpers, including Mr. Robles, concerning Defendants' failure to pay minimum wage for each hour worked or to pay overtime rates.  Id. ¶ 12.

Therefore, Plaintiff's motion for conditional certification is granted as to non-managerial drivers, helpers and other employees performing similar duties, such as loading and unloading trucks, driving trucks, making deliveries and collecting payments from customers, see Comp. ¶ 23; Robles Decl. ¶¶ 3-4; helping to "load vehicles, clean up the warehouse, and locate products in the warehouse and prepare them for loading," see Golden Decl. ¶ 3; and assisting a driver in "loading the truck, dropping supplies of at [a] vendor's restaurant, and unloading the trucks," see id. ¶ 5.  Plaintiff's motion is denied as to "warehouse workers," see Notice of Mot. 1, to the extent (if any) that these employees do not have similar duties.  See Colon, 2013 WL 3328223, at *8 (holding that, "to the extent that the proposed notice defines those eligible to join the class as anyone other than [the plaintiff's job title] or individuals with the same or similar duties, the

notice is overbroad and must be modified . . . .").  Plaintiff has not described the job duties of warehouse workers, and neither Mr. Robles nor Mr. Golden claimed to have spoken with any warehouse workers concerning their conditions of employment.  See Robles Decl. ¶ 16 (describing conversations with "other drivers and helpers"); Golden Decl. ¶ 12 (same).

### D.  The Notice of Lawsuit and Consent to Join

Plaintiff seeks court approval of its proposed Notice of Lawsuit and Consent to Join form.  Pl. Mem. 11.  Plaintiff's proposed Notice of Lawsuit would inform potential opt-in plaintiffs of their right to participate in the litigation, the effect of joining the collective action and what steps to take to join the collective action.  See Taubenfeld Decl. Ex. 3.  Plaintiff has also provided a proposed Consent to Join form authorizing Plaintiff's attorney to represent the putative opt-in plaintiffs in this action.  See Taubenfeld Decl. Ex. 4.  Defendants have not raised any specific objections to either the Notice of Lawsuit or the Consent to Join.

In FLSA actions, court-authorized notice to potential opt-in plaintiffs of their right to file consent forms and opt in is preferred because "both the parties and the court benefit from settling disputes about the content of the notice before it is distributed."  Hoffman-La Roche Inc. v. Sperling, 493 U.S. 165, 172 (1989).  It is within the court's discretion to determine the contents of a court-ordered notice.  See Siewmungal, 2012 WL 715973, at *4.

### 1.  Modifications to the Notice of Lawsuit and Consent to Join Form

The Court authorizes Plaintiff to send a copy of the Notice of Lawsuit and Consent to Join form that are attached to this Memorandum and Order as Appendices A and B.  The attached documents are modified versions of Plaintiff's proposed Notice of Lawsuit and Consent to Join form.  The revised documents clarify, inter alia, that this is a collective action opt-in, not a class action, and explain the opt-in members' rights with regard to legal representation.  In the

Consent to Join form proposed by Plaintiff, the opt-in members, by opting in, would have been agreeing to representation by Plaintiff's counsel. While that is an option for the opt-in members, they may also retain another attorney or represent themselves.

### a. Clarification Concerning Similarly Situated Employees and the Collective Action

Plaintiff's proposed notice is overbroad because it is not limited to non-managerial drivers, helpers and other employees with similar job duties. See Sobczak, 540 F. Supp. 2d at 365 ("[T]he proposed notice should only go to current and former employees of defendants who share similar occupational titles as the current plaintiffs to this action."); see also Hamadou, 915 F. Supp. 2d at 669 (requiring the collective action notice to include the language, "Your right to participate in this suit may depend upon a later decision by the federal court that you and the Class [sic] Representatives are 'similarly situated.'"); Gani, 2011 WL 167844, at *2 (noting with approval that the "notice does not mislead potential plaintiffs into thinking that any finding has been made that they are in fact 'similarly situated' to plaintiff"). Therefore, the attached Notice of Lawsuit and Consent to Join form contain revisions clarifying that participation in the collective action is limited to similarly situated employees.

The Notice of Lawsuit has also been made specific to the collective action portion of Plaintiff's claims, to clarify to potential opt-in plaintiffs that the Notice of Lawsuit and Consent to Join form do not concern the class action or retaliation portions of Plaintiff's lawsuit. See Brabham, 2013 WL 3357722, at *1 (requiring the plaintiffs to not use the word "class" in their notice of a collective action); Sexton v. Franklin First Fin., Ltd., No. 08 Civ. 4950 (JFB) (ARL), 2009 WL 1706535, at *13 (E.D.N.Y. June 16, 2009) (stating that "the phrase 'collective action' should be used to describe the lawsuit in its current form").

### b. Clarification Concerning Legal Representation; Consent Forms Will Be Mailed to the Clerk of Court

The Notice of Lawsuit and Consent to Join form have been modified to better inform the potential opt-in plaintiffs of their options for legal representation. The "proposed plaintiffs are not required to accept plaintiffs' counsel as their own" and "may still participate in this action through separate counsel." Calderon, 892 F. Supp. 2d at 463; see Kemper v. Westbury Operating Corp., No. 12 Civ. 895 (ADS) (ETB), 2012 WL 4976122, at *7 (E.D.N.Y. Oct. 17, 2012) (revising notice to state "you may contact Plaintiffs' lawyers or any other lawyers of your choosing"). The modified notice states that, if a potential opt-in plaintiff wishes to be represented by Serrins Fisher, LLP, the firm will provide a fee agreement. See N.Y. Comp. Codes R. & Regs. tit. 22, § 1215.1 (requiring a written letter of engagement and/or retainer agreement).[9] The revised language is akin to that favored by the courts in Rosario v. Valentine Avenue Discount Store, Co., Inc., 828 F. Supp. 2d 508, 524-25 (E.D.N.Y. 2011) (concerning options for legal representation), and Lynch, 491 F. Supp. 2d at 373 (concerning fee agreements), a case cited by Plaintiff for approving a "very similar" proposed notice. Pl. Mem. 11. The notice was also revised to "include a clear statement that receipt of the notice does not indicate an entitlement to recovery." See Siewmungal, 2012 WL 715973, at *5.

Regardless of the qualifications of Serrins Fisher, LLP—which this Court has no reason to doubt—the Consent to Join form should not be solely for the use of potential opt-in plaintiffs who wish to be represented by that firm. Indeed, the proposed Consent to Join form is mainly a vehicle for obtaining consent for representation, both in its content and effect, as only those potential plaintiffs who agree to be represented by Plaintiff's counsel may utilize the proposed

---

[9] As to those potential plaintiffs who contact Plaintiff's counsel directly or who indicate on their opt-in forms filed with the Court that they wish to be represented by Plaintiff's attorney, Plaintiff's attorney may provide to them a proposed representation agreement.

form.  <u>See</u> Taubenfeld Decl. Ex. 4.  Therefore, the Consent to Join form will be revised so it will be of value to potential opt-in plaintiffs irrespective of their choice of legal representative.

In addition, the Notice of Lawsuit and Consent to Join form have been revised to specify that the original Consent to Join form should be sent to the Clerk of Court, not to Plaintiff's counsel.  Several courts in this Circuit have held that a provision directing potential opt-in plaintiffs to send their consent forms to the named plaintiff's counsel "improperly discourages class members from seeking outside counsel."  <u>Bowens v. Atl. Maint. Corp.</u>, 546 F. Supp. 2d 55, 84 (E.D.N.Y. 2008) (listing cases).  Sending the Consent to Join form to the Clerk of Court avoids the risk of delaying a tolling of the statute of limitations relating to an individual opt-in plaintiff's claims as a result of the turnaround time occasioned between receipt of a consent form by Plaintiff's counsel and the need to file the form with the Court.  Thus, this practice is in the best interest of any opt-in plaintiff.

Finally, the Court will add a line requesting each opt-in plaintiff's email address; as discussed below, Plaintiff asserts this is relevant contact information and the Court agrees.

### c.  Concluding Language

The Notice of Lawsuit will conclude with the following routinely required language, in bold type and capital letters, because this language will correctly identify the court authorizing the notice and will confirm that the merits of the case have yet to be determined:  "**THIS NOTICE AND ITS CONTENTS HAVE BEEN AUTHORIZED BY THE UNITED STATES DISTRICT COURT, EASTERN DISTRICT OF NEW YORK, HONORABLE VERA M. SCANLON, UNITED STATES MAGISTRATE JUDGE.  THE COURT HAS TAKEN NO POSITION IN THIS CASE REGARDING THE MERITS OF THE PLAINTIFF'S CLAIMS OR OF THE DEFENDANTS' DEFENSES.**"  <u>See</u> <u>Melgadejo v. S</u>

& D Fruits & Vegetables Inc., No. 12 Civ. 6852 (RA) (HBP), 2013 WL 5951189, at *6

(S.D.N.Y. Nov. 7, 2013) (requiring this language); Diaz v. S & H Bondi's Dep't Store, No. 10

Civ. 7676 (PGG), 2012 WL 137460, at *10 (S.D.N.Y. Jan. 18, 2012) (same); Iriarte v. Redwood

Deli & Catering, Inc., No. 07 Civ. 5062 (FB) (SMG), 2008 WL 2622929, at *7 (E.D.N.Y. June

30, 2008) (same); Sobczak, 540 F. Supp. 2d at 368 (same); Lynch, 491 F. Supp. 2d at 374

(same); Gjurovich v. Emmanuel's Marketplace, Inc., 282 F. Supp. 2d 91, 99 (S.D.N.Y. 2003)

(same).

### 2. Calculating the Relevant Time Period for Notice and Discovery

Through his repeated reliance on the time period of October 5, 2009 through the present

as the proper time period for notice and discovery, Plaintiff implies that the relevant statute of

limitations concerning the potential opt-in plaintiffs runs from "3 years before the filing of the

complaint." See Notice of Mot. 1; Taubenfeld Decl. Ex. 3. The FLSA permits a three-year

statute of limitations, rather than two years, where the defendants' actions were willful. 29

U.S.C. § 255(a). Where, as here, the plaintiff has alleged willfulness, it is appropriate to use a

three-year statute of limitations when considering notice of conditional certification. See

Hamadou, 915 F. Supp. 2d at 668; Enriquez, 2012 WL 440691, at *3. However, in FLSA

collective actions, the statute of limitations is not tolled for opt-in plaintiffs until the "date on

which [their] written consent is filed in the court in which the action was commenced." 29

U.S.C. § 256(b). Although "[i]t is obviously impossible to know precisely when individual

plaintiffs will opt in," some courts in this Circuit have calculated the time period for provision of

notice from three years prior to the date of the relevant order, rather than three years prior to the

complaint. See Enriquez, 2012 WL 440691, at *3.

In contrast, other courts in this Circuit have calculated the three years from the date of the complaint. See Hamadou, 915 F. Supp. 2d at 668. As "equitable tolling issues often arise for prospective plaintiffs, courts frequently permit notice to be keyed to the three-year period prior to the filing of the complaint, 'with the understanding that challenges to the timeliness of individual plaintiffs' actions will be entertained at a later date.'" Winfield v. Citibank, N.A., 843 F. Supp. 2d 397, 410 (S.D.N.Y. 2012) (quoting Whitehorn v. Wolfgang's Steakhouse, Inc., 767 F. Supp. 2d 445, 451 (S.D.N.Y. 2011), and listing cases). As discussed below, this Court will permit certain equitable tolling of the potential opt-in plaintiffs' claims; other equitable tolling issues may also arise. Moreover, Defendants raised no objection to Plaintiff's proposed time period. Therefore, for purposes of the notice, the Court will allow the Plaintiff to use the time period of October 5, 2009 to the present, which represents three-years prior to the filing of the Complaint. This Memorandum and Order does not preclude Defendants from challenging the timeliness of any potential opt-in plaintiff's claims.

### 3. The Deadline for Filing the Consent to Join Form

Plaintiff requests a sixty-day deadline for the potential opt-in plaintiffs to join the collective action. Pl. Mem. 11. Plaintiff believes that many of the potential opt-in plaintiffs may be difficult to reach. Id. Several courts in this Circuit have allowed a sixty-day deadline. See Colon, 2013 WL 3328223, at *8 ("[T]he Court agrees that it would be reasonable for the proposed notice to give potential plaintiffs 60 days to opt in . . . ."); Hamadou, 915 F. Supp. 2d at 669 ("the opt-in period for the action will be 60 days from the date of the notice"); Enriquez, 2012 WL 440691, at *5 ("60 days is reasonable given the possible difficulties in reaching potential plaintiffs."); Moore v. Eagle Sanitation, Inc., 276 F.R.D. 54, 60-61 (E.D.N.Y. 2011) (stating that "allowing for a sixty day notice period for potential plaintiffs to return their opt-in

forms is appropriate and is common practice under the FLSA," and listing cases); <u>Avila v. Northport Car Wash, Inc.</u>, 774 F. Supp. 2d 450, 457 (E.D.N.Y. 2011) (same). Defendants have offered no argument in opposition to this request. Therefore, Plaintiff's request for a deadline of sixty days from the date of the mailing of the notice by Plaintiff's counsel for the putative opt-in plaintiffs to join the collective action is granted. Prior to mailing, Plaintiff will type the appropriate deadline date into the blank spaces on the revised Notice of Lawsuit and Consent to Join form.

### 4. Translation of the Notice of Lawsuit and Consent to Join Form

Plaintiff seeks permission to translate the Notice of Lawsuit and Consent to Join form into Arabic and Spanish because, Plaintiff alleges, these are the primary languages of a majority of Defendants' employees. Pl. Mem. 12. <u>See Colon</u>, 2013 WL 3328223, at *8 (holding "that the notice may be translated into the mother tongue of non-English speaking groups of potential plaintiffs"); <u>Avila</u>, 774 F. Supp. 2d at 456 (granting request to circulate proposed notice and consent form in English and Spanish); <u>Gjurovich</u>, 282 F. Supp. 2d at 99-100 (requiring translation of proposed notice and consent form "[i]f a substantial number (25 percent or more) of potential plaintiffs speak a language other than English"). This request comports with the "broad remedial purpose" of the FLSA, <u>Braunstein v. E. Photographic Labs., Inc.</u>, 600 F.2d 335, 336 (2d Cir. 1978), and again, Defendants have not specifically objected to the request. Plaintiff's request for permission to translate the revised Notice of Lawsuit and Consent to Join form into Arabic and Spanish is granted.

### 5. Posting of the Notice of Lawsuit at Defendants' Warehouses

Plaintiff seeks an order requiring Defendants to post the Notice of Lawsuit at their two Brooklyn warehouses. Pl. Mem. 13. "Posting the notice is a reasonable means of assuaging the

vagaries of notice by mail, and would not unduly burden the defendants."  Enriquez, 2012 WL

440691, at *5; see Hamadou, 915 F. Supp. 2d at 669 (approving request to post notice); Kemper,

2012 WL 4976122, at *7 (same); Whitehorn, 767 F. Supp. 2d at 449 ("Courts routinely approve

requests to post notice on employee bulletin boards and in other common areas, even where

potential members will also be notified by mail.").  In this case, posting the revised notice in two

locations will not burden the Defendants and may assist in the notification of the potential

plaintiffs.  Plaintiff's request for an order requiring Defendants to post the Notice of Lawsuit at

their two Brooklyn warehouses is therefore granted.  The English, Spanish and Arabic language

notices are to be posted at each location.  In addition, Defendants will post the revised Consent to

Join, in English, Spanish and Arabic, next to the revised Notice of Lawsuit at each of their

locations.

### E.  Discovery Concerning Potential Opt-In Plaintiffs

To facilitate notice, Plaintiff seeks discovery, in paper and digital format, of the names,

mailing addresses, email addresses, telephone numbers and social security numbers of

Defendants' non-managerial drivers, helpers, warehouse workers and other employees

performing similar duties during the time period of October 5, 2009 to the present.  Pl. Mem. 12-

13; Notice of Mot.  "Disclosure of the names, addresses, telephone numbers and email addresses

of putative class members is commonplace in this district because such information is essential

to identifying and notifying potential opt-in plaintiffs."  Melgadejo, 2013 WL 5951189, at *7

(concerning the Southern District of New York, but also citing to cases from the Eastern District

of New York); Ack v. Manhattan Beer Distribs., Inc., No. 11 Civ. 5582 (CBA) (SMG), 2012 WL

1710985, at *6 (E.D.N.Y. May 15, 2012) (noting that "[c]ourts routinely order discovery of

names, addresses, and telephone numbers in FLSA actions" and also requiring the production of

email addresses; listing cases); <u>Lynch</u>, 491 F. Supp. 2d 357, 371-72 (requiring the defendants to identify, for each similarly situated potential plaintiff, his or her "name, address, telephone number, dates of employment as a special investigator, location of employment, date of birth, and last four digits of [his or her] Social Security Number"); <u>Sobczak</u>, 540 F. Supp. 2d at 365 (requiring that "the names and addresses of potential plaintiffs shall be disclosed to plaintiffs' attorney within 15 days from the date this Order is entered").

Some courts in this Circuit have allowed the production of Social Security numbers or at least the last four digits thereof. <u>See, e.g.</u>, <u>Fang v. Zhuang</u>, No. 10 Civ. 1290 (RRM) (JMA), 2010 WL 5261197, at *4 (E.D.N.Y. Dec. 1, 2010) (listing cases in which courts have "ordered production of the Social Security numbers of prospective plaintiffs in FLSA actions"; requiring such production, pursuant to a protective order); <u>Spicer v. Pier Sixty LLC</u>, 269 F.R.D. 321, 339 (S.D.N.Y. 2010) (in the context of a FRCP 23 class action, requiring "disclosure of putative class members' social security and telephone numbers"); <u>Lynch</u>, 491 F. Supp. 2d 357, 371-72.

Other courts in this Circuit "decline to allow discovery of social security numbers due to privacy concerns, [but] it is generally accepted that such discovery is permitted where Plaintiff can demonstrate that names and contact information are insufficient to effectuate notice." <u>Whitehorn</u>, 767 F. Supp. 2d at 448 (requiring the defendants to produce Social Security numbers, pursuant to a protective order, for "prospective members whose mailings were returned as undeliverable and any prospective members for whom Defendants are unable to locate contact information"); <u>see</u> <u>Brabham</u>, 2013 WL 3357722, at *8 (denying request for the last four digits of potential opt-in plaintiffs' Social Security numbers); <u>Pippins v. KPMG LLP</u>, No. 11 Civ. 0377 (CM) (JLC), 2012 WL 19379, at *14 (S.D.N.Y. Jan. 3, 2012) ("Plaintiffs have agreed to refrain from seeking potential opt-in plaintiffs' Social Security numbers for the time being, and will

only request the numbers for individuals whose notices are returned as undeliverable."); Rosario, 828 F. Supp. 2d at 522 ("If plaintiff is unable to effectuate notice on some potential opt-in plaintiffs with the information that is produced, plaintiff may renew his application for [the Social Security numbers of] those specific employees.").

In this case, Plaintiff's routine request for the names, mailing addresses, email addresses and telephone numbers of Defendants' drivers, helpers and other employees performing similar duties during the time period of October 5, 2009 to the present will assist in the provision of notice to these potential opt-in plaintiffs. To the extent Plaintiff seeks discovery concerning "warehouse workers" who do not perform similar duties to drivers and helpers, Plaintiff's request is denied for the reasons discussed above.

Plaintiff further asserts that the discovery of Social Security numbers is necessary for locating the potential opt-in plaintiffs, particularly because Defendants claim that their records were mostly destroyed during Superstorm Sandy. Pl. Mem. 13. However, it is not yet clear what information Defendants possess. If Plaintiff is unable to locate specific potential plaintiffs after receiving the discovery required by this Memorandum and Order, Plaintiff may renew his request for the Social Security numbers of those individuals.

Furthermore, Plaintiff requests production of contact information in both electronic and paper format. See Pl. Mem. 13. Courts in this Circuit have granted similar requests, despite the slightly duplicative nature of requiring both formats. See Colon, 2013 WL 3328223, at *8 (requiring production "in paper and electronic formats"); Hanchard-James v. Brookdale Family Care Centers, No. 12 Civ. 1922 (BMC), 2012 WL 3288810, at *7 (E.D.N.Y. Aug. 9, 2012) (same). The anticipated production, which concerns at least forty employees, see Compl. ¶¶ 40, 42, (or as few as thirteen, see Def. Letter 1), will not be overly burdensome to Defendants even if

they do not currently have the information in an electronic format. Defendants have raised no specific concerns with the production of this information in both formats.

In summary, Plaintiff's request for the names, mailing addresses, email addresses and telephone numbers of Defendants' employees who worked as non-managerial drivers, helpers, or employees with similar job duties between October 5, 2009 and the present is granted. This information will be provided in both paper and electronic format. Plaintiff's request for Social Security numbers is denied, with leave to renew.

I note that in discovery conferences in this case, Defendants have repeatedly mentioned the destruction of their property and records by Superstorm Sandy. Defendants are expected to undertake their best efforts to comply with this Order. It is possible, however, that given the damage caused by the storm, Defendants' own record copies may have been destroyed. If Defendants do not have the necessary information in their possession, counsel are expected to meet and confer to determine and pursue the best avenues for obtaining the information (e.g., payroll company records, tax records, depositions). Any difficulties in complying with this Order are to be brought to the Court's attention as soon as possible after counsel have met and conferred.

### F. Equitable Tolling

Plaintiff requests that the Court toll the statute of limitations for the potential opt-in plaintiffs during the period while this motion has been pending. As discussed above, the statute of limitations is not tolled for opt-in plaintiffs until the "date on which [their] written consent is filed in the court in which the action was commenced." 29 U.S.C. § 256(b). Courts in this Circuit have permitted equitable tolling while the motion for conditional certification was before the court. See Colon, 2013 WL 3328223, at *8 (granting motion to toll the statute of limitations

while motion was pending); McGlone v. Contract Callers, Inc., 867 F. Supp. 2d 438, 445 (S.D.N.Y. 2012) (tolling the statute of limitations because opt-in plaintiffs should "not be penalized due to the courts' heavy dockets and understandable delays in rulings").  Defendants have not specifically opposed this request.  Therefore, the Court grants Plaintiff's motion and the statute of limitations applicable to the potential opt-in plaintiffs will be stayed for the 272 days between the March 21, 2013 filing of Plaintiff's request for a pre-motion conference and the filing of this Memorandum and Order.  See Letter to Hon. Frederic Block from Liane Fisher, Esq., Mar. 20, 2013, ECF No. 20 (filed March 21, 2013; requesting, in accordance with the individual rules of the District Judge, a pre-motion conference concerning conditional certification).

### G.  The Timeline for Discovery and Notice

Neither party has suggested any particular timeline for discovery and provision of notice. See Notice of Mot.; Defs.' Letter.  The discovery at issue is neither complex nor voluminous. Therefore, Defendants will be required to produce the above-mentioned discovery within thirty days of the filing of this Memorandum and Order.  Within thirty days of the production of that discovery, 1) Plaintiff will send the modified Notice of Lawsuit and Consent to Join form to the putative opt-in plaintiffs, and 2) Defendants will post the modified Notice of Lawsuit and Consent to Join form (including any version translated into Arabic and/or Spanish that Plaintiff provides to Defendants) at both of their Brooklyn warehouses, in areas where these documents will be visible to non-managerial drivers, helpers and other employees with similar job duties.

### III.    CONCLUSION

For the reasons stated above, Plaintiff's motion is granted in part and denied in part.  The text of the Notice of Lawsuit and Consent to Join form are approved, as modified and attached as

Appendices A and B. Plaintiff may circulate the revised Notice of Lawsuit and Consent to Join form to non-managerial drivers, helpers and employees with similar job duties who were employed by Defendants between October 5, 2009 and the present. Plaintiff's motion as to warehouse workers is denied, to the extent that those employees did not have similar job duties to drivers and helpers. To facilitate notice, Defendants will provide, within thirty days of this Memorandum and Order, a complete list, in paper and electronic formats, of the names, mailing addresses, email addresses and telephone numbers of these employees. Plaintiff's request for the Social Security numbers of potential opt-in plaintiffs is denied, with leave to renew if necessary. Within thirty days of Defendants' production, Plaintiff will mail the modified Notice of Lawsuit and Consent to Join form to the potential opt-in Plaintiffs. Plaintiff may include in the mailing a translation of these documents in Arabic and Spanish. In addition, within thirty days of Defendants' production, Defendants will post the modified Notice of Lawsuit and Consent to Join form, as well as any translated versions provided by Plaintiff, in both of their Brooklyn warehouses. Potential collective action members will have sixty days from the date of the mailing of the notice in which to opt into the collective action. Prior to mailing, Plaintiff will type the appropriate deadline date into the blank spaces on the revised Notice of Lawsuit and Consent to Join form. In addition, the statute of limitations will be equitably tolled as to these individuals for the 272 days in which Plaintiff's motion was pending.

**SO ORDERED.**

Dated:  Brooklyn, New York
         December 18, 2013

/s/
_____
VERA M. SCANLON
United States Magistrate Judge